READING (SHANKWIKER v.). See Case No. 12,704.

READING (UNITED STATES v.). See Case No. 16,127.

## Case No. 11,613.

READY ROOFING CO. et al. v. TAYLOR et al.

[15 Blatchf. 94; 3 Ban. & A. 368.] [1]

Circuit Court, S. D. New York. July 23, 1878.

PRACTICE IN EQUITY — REARGUMENT — NEW TRIAL — NEWLY-DISCOVERED EVIDENCE — DECREE — PATENTS — INJUNCTION — CONTEMPT.

1. The principles stated which govern the question whether a cause shall be re-argued, after a decision.

2. The rules stated which govern the question of granting a new trial, to introduce new evidence.

3. The knowledge and diligence of counsel are to be considered, on such question, the same as those of the party.

4. In this case, it was held, that, by the exercise of ordinary diligence, the new evidence sought to be introduced could have been discovered, so as to be introduced at the former trial, and that it was not of such materiality and weight that it would probably change the result.

5. The form of a decree establishing the validity of letters patent, commented on.

6. A violation of an injunction in a suit on letters patent not having been wilful, and a motion for an attachment for contempt for such violation having been made, with a view to determine whether the method used by the defendant was an infringement of the patent, the court, in adjudging the defendant guilty of such contempt, ordered that he pay to the plaintiff the profits and damages on account of the violation of the injunction, and the costs of the proceeding.

[This was a bill in equity by the Ready Roofing Company and William H. H. Childs against Benjamin H. Taylor and others, for the infringement of a patent.]

Frank J. Mather, for plaintiffs.

James A. Hudson, for defendants.

WHEELER, District Judge. This cause has been further heard on the motion of the defendants for a modification of the decree heretofore made on the original pleadings and proofs, for reopening the case on affidavits of new proofs, for re-settlement of the decree, and the motion of the orators for an attachment for a violation of the injunction issued in pursuance of the decree. Ordinarily, parties against whom proceedings for contempt in violating an injunction are pending, will not be heard upon other proceedings to affect

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here compiled and reprinted by permission.]

the injunction, until they have cleared themselves from, or purged themselves of, the contempt. But, in these proceedings, the parties appear to be endeavoring, by mutual understanding, to try a question of right between them, and not any charge for wilful disobedience of the order of the court; and, for the purpose of trying the right, all these motions have been heard together.

It is not understood, that, after a full hearing, and especially after decision thereupon, the parties to a cause have any right to have it re-argued by either the same or different counsel. Still, as a matter of discretion, the defendants have again been heard by new counsel. And, after re-examination of the cause, so far as has in any wise been thought due to the further argument, no substantial reason is seen for any decision different from that already made upon the case as originally presented.

The new proofs offered consist of three English patents and one American patent, and oral testimony of witnesses. The motion to re-open the case is, substantially, a motion for a new trial, for the introduction of new evidence, and must be governed by the same rules that such motions are. These rules require that the evidence be newly discovered in fact; that, by the exercise of ordinary diligence, it could not be discovered so it could be introduced at the former trial; and that it be of such materiality and weight that it would probably change the result. And, upon such questions, the knowledge and diligence of counsel must be considered the same as those of the party.

It does not at all appear but that this evidence was all seasonably known to the counsel of the party now seeking an opportunity to introduce it. New counsel make the motion, and no affidavit or statement of the former counsel as to his knowledge is offered, nor the lack of it in any way explained or supplied. The affidavit of the defendant Rankin only is offered on this point, and that is confined to the state of his own personal knowledge, and does not extend to his belief even of that of the counsel or co-defendants. And, if that of himself was all that is necessary to be shown, his affidavit falls far short of the requirements. As to the patents, he merely says that he never saw the American one, and did not know of the existence of two of the English ones till after the hearing. The connection in which he denies seeing the one and knowledge of the other raises a quite strong inference that he knew of the existence of the former, and, if he did, probably his counsel knew of its contents. And, whether he know of any of them or not, they all appear to have been found among the records of the patent office, where they might have been found as readily before as after the hearing.

With respect to the new oral proof, he says that he took much personal interest in the preparation of the case for trial, and that not until during the argument of the case before the court did it seem possible to him that any distinction would be attempted to be drawn, by any body, between a layer of bituminous material and a coat of the same mixture between sheets of tarred roofing paper; and that during the examination of the witnesses no such distinction was, by anything that transpired, called to his attention. In this he is clearly either at fault, or in error. That distinction was made prominent in the testimony of the patentee, at the first taking of testimony in the cause on the part of the orators, and he defined what he claimed to be a layer of bituminous material in the sense used in his patent and in the trade, very distinctly, and also the difference between it and a coating, in the same senses. He said: "These layers of bituminous composition and paper" "have a distinct identity and utility of their own, and are as different from each other as the layers of brick and layers of mortar are in a brick house;" and that "it would be impossible to conceive of a coating separate and apart from the thing coated." That the counsel of this defendant fully understood this distinction at that time fully appears from the cross-examination, where he inquired particularly of the witness in regard to it. The same distinction also appears to have been taken at various places in the cross-examination of the defendants' witnesses. So, if the defendant means to be understood that the distinction was not made at all, he is in grave error; if merely that he did not notice it, he was greatly in fault, if he relied upon himself to notice what occurred. But, whether he noticed it or not, his counsel did, which, as before mentioned, is the same as if he had. The distinction was apparent, and the failure to notice and comprehend its materiality, if there was such failure, is wholly unaccounted for.

The defendant does not expressly say whether he knew of the existence of this new testimony or not; but, as some of it is from himself, he must have known of that, and as most of the rest is from witnesses before examined in his own behalf, he probably knew of that. That from wholly new witnesses besides himself would be wholly indecisive.

The application seems to be reduced to standing upon the ground, solely, that the defendant himself did not notice that distinction which was early and clearly made, and that he could better his case now that he has noticed it. Had he been managing his own cause this would not furnish one of the gravest reasons mentioned by the late circuit judge, Johnson, in Buerk v. Imhaeuser [Case No. 2,107], for the departure from the ordinary course of the administration of justice sought. Still less is it sufficient when he was represented by able counsel, who, for aught that appears, noticed, appreciated and attended to that which he did not.

No point in these respects has been made by the counsel for the orators, but the ending

litigation is a matter in which the courts themselves and other suitors, as well as the public, have an interest, and new trials should not be granted in a court where so many causes are waiting for one trial even, as there are in this, especially, without proper reasons made to appear not only when questioned but in fact.

But, if these grounds should be passed, there would remain the question as to whether the new proof is of sufficient materiality and weight. One of the English patents was for a coating or layer of adhesive material and broken glass on paper or boards, to be applied to the bottoms of ships or other surfaces, to protect them from worms; one for a fabric composed of a sheet of cloth between two layers of bitumen; the other for a layer of bituminous material, but whether it was placed between sheets of paper or cloth does not clearly appear. The American patent is for a fabric "consisting of a central layer or web of cloth, or its equivalent, covered on both sides with adhering layers of water-proofing, the outward side of one of which is covered with a layer of paper fixed thereto by contact with the water-proofing while it is in a warm and plastic state, while upon and embedded in the outward side of the other layer of water-proofing is a layer of sand or its equivalent, forming the uppermost or weather surface of the article." The patent in controversy is for a fabric composed of a layer of bituminous material between sheets of saturated paper, increased in thickness by the addition of alternate layers of material and paper when and as desired. The mere statement of the composition of these various fabrics shows that the one covered by this patent differs from all the others. That described in the American patent is most like this. That has the same layers of water-proofing, as it is there called, but not protected by saturated paper, nor its equivalent, but by a layer of sand, on the outside, and by common paper or cloth between the layers, and common paper on the inside, making the structure of it quite different.

The oral proof, if received, would be mostly that of witnesses before examined, as before mentioned, merely making more full explanations and descriptions of what they have already described. Most of them have already testified to making material similar to that patented, before the time of the invention, but, when called upon to describe the process, have given one that would produce a fabric without an interposed layer of bituminous material. They now say that the nature of the materials used was such that more than a coating would necessarily be left. Probably it would, in some parts of the product; but, if so, the making a layer was not the object sought, and the one produced would be uneven and thin or wholly wanting in places, and not at all such a layer of uniform thickness as the patent describes.

Such places of thick material account for what appearance there is of a layer in the fragments of old roofing attached to the affidavit of William A. Gay.

The new witnesses, aside from the defendant Rankin, are E. Burgess Warren, whose testimony would be to making the same material before testified about by Howard Kirk and merely cumulative to his; and Davis W. Bailey, whose testimony would be to making roofing of saturated cheap muslin between sheets of saturated paper, of saturated drilling adhered to saturated roofing felt by a mixture of residuum of coal-tar, pine-tar, and pulverized soap stone, and by substituting manilla paper for the muslin, before the invention of this patentee. These products would be different from the patented fabric, or, at most, not so nearly like it, that their manufacture would clearly be an anticipation. All together, this falls far short of the plainest proof that the new evidence would lead the court to a different result, said by the learned circuit judge to be requisite, in the case of Buerk v. Imhaeuser, before cited.

The decree, as already settled, establishes the validity of the patent, without giving it any construction, and restrains infringement in the same general terms. This is understood to be in accordance with common but not uniform practice. Where a patent is open to construction, and is sustained upon some construction given, it would tend to lessen doubt and confusion to have the decree conform to the construction. This patent is not very peculiar in this respect, and, whatever construction it has received, is readily accessible in the opinion filed. Under these circumstances, it is not thought to be necessary to the preservation of the rights of the parties to now set aside the decree filed and settle it anew.

The motions of the defendants are, therefore, severally overruled.

The patent established by the decree is, as before mentioned, for a roofing fabric composed of a layer or layers of bituminous composition, protected and strengthened by outer and alternate sheets of saturated paper. The defendants avow making, since the injunction, and intention to further make, if allowed, four sorts of roofing, which the orators claim are infringements, and the defendants that they are not. Each has one or more layers of bituminous composition. It is said that the layers are of coal-tar pitch, which is different from bitumen, and that, therefore, the fabric is different. The patent specifies bituminous material. Whatever has the qualities of bitumen is, to that extent, bituminous. This pitch, although very different from bitumen in some respects, has the qualities of it in several, and, perhaps, in most that are important in these fabrics. They are both adhesive, impervious to water, and plastic, and useful for these qualities in this art. In this sense, which is that of the patent, the pitch is bituminous. In each sort of the

defendants' roofing the layers are protected on the side uppermost in use by saturated paper, and in two of them on the under side also. In one of the others unsaturated manilla paper, and in the other unsaturated felt, is substituted for the saturated paper on the under side. In some of them cloth, in others unsaturated manilla, and in still others unsaturated felt paper, is inserted between the layers. Those that have saturated paper on each side of the fabric embrace all the ingredients of the orators, arranged in the same way, for the same purposes. and to the same effect, with the addition of the interior sheets of paper and cloth. These additions may be improvements, but, if they are, the use of the invention, to improve it, is none the less an infringement. Neither manilla paper nor the unsaturated felt is a new discovery, as a substitute for saturated paper, to protect the under side or strengthen the interior of such fabrics. They are mentioned or alluded to as such in the original patent. It is argued, that the use of equivalents known to be such at the time of the patent, and not specified as such in it, is not an infringement, and that the reissue cannot be helped out by reference to the original, in this respect. Of course, the reissue is all the patent in force, but then the argument does not seem to be well founded. In Seymour v. Osborne, 11 Wall. [78 U. S.] 516, Mr. Justice Clifford, at page 556, says: "Mere formal alterations in a combination in letters patent, however, are no defence to the charge of infringement, and the withdrawal of one ingredient from the same and the substitution of another which was well known, at the date of the patent, as a proper substitute for the one withdrawn, is a mere formal alternation of the combination, if the ingredient substituted performs substantially the same function as the one withdrawn." Here the manilla paper and unsaturated felt do perform substantially the same function as the saturated paper they are substituted for in the defendants' fabrics. This case is much like Walton v. Potter, 4 Scott, N. R. 91. and Webst. Pat. Cas. 585, in which Chief Justice Tindal instructed the jury that the question of infringement was not simply whether, in form or circumstances that might be more or less immaterial, that which had been done by the defendants varied more or less from the specifications of the plaintiff's patent, but whether, in reality, in substance, and in effect, the defendants had availed themselves of the plaintiff's invention, in order to make that fabric.

In this case, the samples of the different manufacturers, and the testimony of witnesses expert in the business, show quite satisfactorily, that the defendants have availed themselves of the invention secured by the patent, to make the fabrics they avow making. For this use of the invention they are adjudged guilty of contempt. As this use does not appear to have been a wilful disregard of the orders of the court, and the question in regard to it has been submitted by the parties in this manner, it is not thought that any further punishment for it than the payment of all profits made or damages occasioned by it, with the costs of these proceedings, is necessary, in order to do justice to the parties and vindicate the authority of the court. The payment of these sums is deemed necessary for those purposes, and should be secured, if necessary, by attachment of the persons of the defendants. Therefore, let an order be entered denying the motions of the defendants, adjudging them guilty of contempt, that a separate account be taken by the master to whom the cause is referred, of the profits and damages beyond, if any, on account of this violation of the injunction, and for the separate taxation of the costs of this proceeding, and for the payment of the whole to the orators within twenty days from the filing the report of the master and taxation of the costs, and that, in default of such payment, the defendants be committed until payment be made.