## Case No. 12,457.
### SCHILLINGER v. GUNTHER.
[15 Blatchf. 303; 1 3 Ban. & A. 491; 14 O. G. 713.]

Circuit Court, S. D. New York. Oct. 17, 1878.

PATENTS—TAKING ACCOUNT—VALUE OF PATENTED IMPROVEMENT—LICENSE FEE—PROFITS.

The claim of letters patent for an improvement in concrete pavements was, "The arrangement of tar paper, or its equivalent, between adjoining blocks of concrete, substantially as and for the purpose set forth." Under an interlocutory decree for an account of profits, the plaintiff did not prove before the master any license fee, as showing the value of the patented improvement, nor did he show such value otherwise. The reference and the master's report proceeded on the view that all the value in the infringing pavement was due to the patented improvement, and the master reported, as profits, the profits made by the defendant in laying the entire pavement: *Held*, that the master should have reported no profits.

[Cited in Star Salt Caster Co. v. Crossman, Case No. 13,320; Kuhl v. Mueller, 21 Fed. 510; Fischer v. Hayes, 22 Fed. 529; Shannon v. Bruner, 33 Fed. 872.]

[This was a bill in equity by John J. Schillinger against Hermann A. Gunther for the infringement of letters patent No. 105,599, granted to plaintiff July 19, 1870, reissued May 2, 1871 (No. 4,364). Heard on exceptions to master's report.]

John Van Santvoord and Edward Fitch, for plaintiff.

Arthur v. Briesen, for defendant.

BLATCHFORD, Circuit Judge. The plaintiff's patent is for an improvement in concrete pavements. Such pavements existed before the plaintiff's invention. The specification of the patent states that the invention "relates to a concrete pavement which is laid in sections, so that each section can be taken up and relaid without disturbing the adjoining sections." The invention relates merely to the laying of the pavement in sections, so as to "allow the blocks to be raised separately without affecting the blocks adjacent thereto," and so as to allow "the several blocks to heave separately from the effects of frost." There is nothing new in the composition of the pavement, as one formed of concrete made "by mixing cement with sand and gravel or other suitable material, to form a plastic compound." The point of the invention, as set forth in the specification, is, that, the pavement being made in sections, the joints between the sections have placed in them "strips of tar paper, or equivalent material, arranged between the several blocks or sections, in such a manner as to produce a suitable tight joint and yet allow the blocks to be raised separately without affecting the blocks adjacent thereto." It was not new to lay concrete pavements in sections. The

1 [Reported by Hon. Samuel Blatchford. Circuit Judge, and by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

plaintiff, after this suit was brought, filed a disclaimer disclaiming any claim merely to the laying of a concrete pavement in detached blocks or sections, without the interposition between the blocks or sections of the tar paper or its equivalent, and admitting that it was not new to lay a concrete pavement in sections. As the specification, before the disclaimer was filed, stated, the concrete, when laid in blocks without the interposition of the tar paper or its equivalent, in the joints between the blocks, would shrink in setting, so that the second-laid block would not adhere to the first-laid block, and the joints would "soon fill up with sand or dust," and the pavement would be "sufficiently tight for many purposes," while the blocks would be "detached from each other," and could be "taken up and relaid, each independent of the adjoining blocks." The disclaimer "disclaims the forming of blocks from plastic material without interposing anything between their joints while in the process of formation." By the "tight joint" produced by the interposition of the tar paper or equivalent material, the specification states, that the patentee means, that the tar paper "constitutes a tight water-proof joint." The specification sets forth, that, after one block or section is completed, the tar paper is placed along the edge where the next block is to be formed, and the plastic composition for the next block is put up against the tar paper; that the tar paper does not adhere to the block first formed, when placed against it, although it may adhere to the edges of the block formed after it is put in its place in the joints: and that, hence, the joints between the blocks are free, so that each block can be removed separately. The specification describes the mode of making the blocks to be, to spread the plastic mass on the bed of the pavement, "either in moulds or between movable joists of the proper thickness," so as to form the edges of the blocks, one block being formed after the other, the joists or partitions between the block first formed and the block next to be formed being removed after the block first formed has set, and the second block being next formed, "each succeeding block being formed after the adjacent blocks have set." Nothing is claimed as new in respect to this mode of forming blocks of concrete pavement. The sole claim of the patent, left after the disclaimer, is this: "The arrangement of tar paper, or its equivalent, between adjoining blocks of concrete, substantially as and for the purpose set forth." It was, therefore, open to the defendant to lay a concrete pavement in detached blocks or sections, by the use of moulds, or movable joists or partitions, in the manner described in the plaintiff's specification, each succeeding block being formed after the adjacent blocks have set, and, to avail himself of the fact affirmed in the plaintiff's specification, that, without the use of tar paper, or its equivalent, interposed in the joints, the concrete will, in set-

ting, shrink, so that the second block, when set, will not adhere to the first, and the blocks, when completed, will be detached from each other, and thus to make a concrete pavement in sections, which can be taken up and relaid, each independent of the adjoining sections. It may be, that, without the use of something extraneous to make a joint, such as the permanent interposition of tar paper or equivalent material between the blocks, or the creation of a joint, by inserting a trowel or other cutting instrument between the blocks, and then removing the instrument, leaving the joint an open one for the time, the detachment of the blocks from each other will not be as effectual or complete as when a joint is formed by the interposed tar paper or trowel, and the blocks cannot be as easily or completely taken up and relaid, each independent of the adjoining blocks. The claim of the plaintiff's patent is for the interposition of the extraneous material to form the joint, whether the permanent tar paper or the temporary trowel or cutting instrument. It is for the artificial division of the pavement by the joint thus made, aside from, and in addition to, any division resulting from the shrinking, in setting, of the concrete in the second block, when placed against the completely set concrete in the first block. I do not understand that the plaintiff, by his disclaimer, affirms that anything stated in his specification is not true, or affirms that it is not true that if the sections are made without the interposition of anything, either permanently or temporarily, between the sections, the blocks will be "detached from each other, and can be taken up and relaid, each independent of the adjoining blocks." All that the disclaimer affirms is, that the plaintiff was not the first to invent what he disclaims, but that it was previously invented by some one else. It does not affirm that the plaintiff did not invent it at all, or that the effect set forth in the specification as resulting from laying the pavement with nothing interposed in the joint, either permanently or temporarily, will not result. A correction of a mistake as to the statement of the effect of laying the pavement in sections, without interposing anything in the joint, is the office of a reissue and not of a disclaimer.

There was an interlocutory decree for the plaintiff on the 22d of April, 1875, adjudging that the plaintiff's patent was valid, and that the defendant had infringed it, and referring it to a master, "to take and state and report to the court an account of all such concrete pavement or sidewalk made, or caused to be made, or used or sold, by the said defendant, since the 2d day of May, 1871, and also the gains and profits which the said defendant has received by or from the manufacture, use or sale of the said patented improvements; and that he also ascertain and report what, if any, damages the said complainant has suffered or sustained, by reason of the said infringement, over and above and be-

yond said gains and profits." Subsequently, an order was made setting forth, that "it appears to this court, that the defendant has made or laid sectional concrete pavements or sidewalks in different methods or modes of construction, all of which methods are claimed to be in violation of said patent," and ordering that the master proceed in said accounting, under the said decree of April 22d, 1875, "and take and state an account of all the sectional concrete pavements or sidewalks made or laid by the defendant, or under his authority, since the 2d day of May, 1871, specifying, as far as may be, the method or methods pursued by the defendant in making or laying the same, and the amount laid under each method, if more than one, to the end that, in the decree that shall be made upon the master's report, it shall be determined and decreed whether all of the methods of laying concrete pavement which have been practised and pursued by the defendant, are or are not within the patent which has been adjudged to be good and valid, and to have been infringed by the defendant, and whether the defendant is, therefore, liable to pay to the plaintiff damages for all or any portion of the concrete pavements which have been constructed by him, or under his authority."

The master has made his report. He states in it, that he directed the defendant to make out and produce before him "an account of all cement or concrete pavements or sidewalks made or laid by him since the 2d day of May, 1871, also the date when laid, the place where, the number of square feet. the price per foot and the total amount received;" that such accounts were produced and are submitted with the report; that "the defendant was also required to produce an account showing the cost or expense of laying such pavements and sidewalks, and the profits derived therefrom by the defendant;" that the defendant produced no detailed account showing such cost or expenses, but produced estimates of expenses, which are submitted with the report; "and that the cost or expense to the defendant of laying the cement pavements or sidewalks stated in his several accounts, is not exceeding 17 cents per square foot." The report states the defendant has laid, as appears from his accounts, 162.843½ square feet of sectional cement pavements, and received therefor the sum of $38.380 70; that the cost of the same, at the rate of 17 cents per square foot, was $27,683 39; that the sum of $10,697 31 is "the profits made by the defendant in the laying of the sectional pavements laid by him," and "is the damage sustained by the complainant if all of the pavements referred to were laid in the manner or according to the process described in the complainant's patent, or are such pavements as are claimed in said patent." The report also shows, that some of the pavement so laid by the defendant was laid with tar paper or its equivalent between the joints; that

some of it was laid by leaving metal plates in the joints and afterwards withdrawing said plates and pouring melted pitch into the open joints; that some of it was made in the last named way, except that the joints were filled with cement; that some of it was made with the use of joists removed before the joint was formed, nothing being left between the blocks but a trowel, or other instrument, or metal strips were used to make a joint, or a separation into blocks, during the process of laying the pavement; and that some of it was laid by a method which this court has held, on attachment proceedings, to be an infringement.

The defendant has filed several exceptions to the report. The report states that the defendant's estimates of expenses are not accurate or reliable, but are greatly overstated as to quantity of materials used and the cost thereof; and that such estimates charge too much per barrel for cement and for too much cement. Exceptions 1, 2, 3 and 4 cover the above matters and are disallowed. Exception 5 excepts to the finding that the cost or expense to the defendant of laying the cement pavements stated in his several accounts, is not exceeding 17 cents per square foot, and is disallowed. As to exception 6. I think the evidence shows that the sum of $809, in respect of the pavements for Coburn and Birdsall, should have been deducted from the sum of $5,637 74 mentioned in paragraph 4 of the report. Exceptions 7, 10, 13, 16 and 18 and part of exception 17 relate to the 17 cents per square foot, as cost, and are disposed of by the ruling as to exception 5, and are disallowed. Exceptions 8 and 9 proceed upon the ground that it does not infringe the plaintiff's patent to lay sectional cement pavements by leaving metal plates in the joints and afterwards withdrawing said plates and pouring melted pitch into the open joints, and are disallowed. Exceptions 11 and 12 proceed upon the ground that it does not infringe the plaintiff's patents to lay sectional cement pavements by leaving metal plates in the joints and afterwards withdrawing said plates and filling the joints with cement, and are disallowed. Exceptions 14 and 15 proceed upon the ground that it is not true that a trowel or other instrument or metal strips were used to make a joint, or a separation into blocks, during the process of laying the pavement mentioned in the report as having been laid with the use of joists removed before the joint was formed, nothing being left between the blocks. I find the fact to be otherwise. There is nothing in the Russ patent or the Little patent like the method of procedure or pavement described in the part of the report to which exceptions 14 and 15 relate. They are disallowed. So much of exception 17 as relates to the sum of $8,-709 80 is disallowed.

Exception 19 excepts to the finding of $10,-697 31 as profits, and insists that the master should have found that the defendant made

no profits in laying sectional cement pavements in the various ways set forth in the report. Exception 20 is to the effect, that the master "has found that the manufacturer's profit of the defendant in laying the several cement pavements which are set forth in the report, is the measure of damage sustained by the complainant by the alleged infringement of his patent, whereas the said master should have found that the manufacturer's profits are not the true measure of damages in such cases." Exception 22 is to the effect, that the master "has failed to report that the complainant has not proved the value of his invention and the license fees, if any, which he actually received for the use of the invention, and that, therefore, the complainant has not shown himself to be entitled to any but nominal damages for the use of his said invention by this defendant."

The decree directed the master to report the profits received by the defendant from the manufacture, use or sale of the patented improvement. It is those profits alone which the plaintiff can recover. He cannot recover anything more, as profits. He cannot recover the profits of the manufacture, sale or use of anything but the patented improvement. He cannot recover the profits of the manufacture, use or sale of anything found in the pavement, or of any part of the pavement, except the patented improvement. Whatever distinctive profit belongs to the use of "the arrangement of tar paper, or its equivalent, between adjoining blocks of concrete, substantially as and for the purpose set forth" in the patent, is the profit to be recovered. Such distinctive profit must be shown affirmatively by the plaintiff. If he fails to show it, he can recover nothing, as profits. The plaintiff has proved no license fee, as showing the value of the patented improvement. Nor has he otherwise shown the value of the patented improvement. No evidence on that subject was given before the master. The reference proceeded on the principle that all the value or usefulness there was in the pavements laid by the defendant was due to the permanent or temporary interposition in the joint, during the process of laying. of something external, to make a separation into blocks or sections. This was clearly a mistake. The plaintiff's invention contributed but a small part of the usefulness of the pavement. As a concrete pavement, with all the advantages due to the smoothness and durability of such a pavement, it was a valuable pavement, without being in blocks or sections made by the use of the patented improvement. The advantage of being in blocks made by the use of the patented improvement was an advantage which does not give to the plaintiff the right to recover the profits of laying the entire pavement. These principles are well settled. Mowry v. Whitney, 14 Wall. [81 U. S.] 620, 649; Phelp v. Knock, 17 Wall. [84 U. S.] 460; Gould's Manuf'g Co. v. Cowing [Cases Nos. 5,642, 5,643]; Black v. Munson [Id. 1,463]; Buerk v. Imhaeuser [Id. 2,107]; Blake v. Robertson, 94 U. S. 728; Garretson v. Clark [Id. 5,248]. Exceptions 19, 20 and 22 are allowed, so far as they claim that the master should not have reported any sum as profits, under the interlocutory decree.

The master also reports, that "the complainant is entitled to recover from the defendant a further sum, as special damage, on account of the laying of the pavement for Andrew Dold, which pavement was laid in the same manner as the City Hall pavement, above referred to, the proofs showing that said pavement was contracted for and laid by the defendant in October, 1876, but is not included in any of the accounts rendered by him;" and that "it is shown that the complainant gave to Dold a bid or estimate for the said work, and that he was underbid by the defendant, and thus was damaged to the amount of $900." Exception 21 excepts to the report, because it finds "that the complainant is entitled to recover from the defendant special damages on account of the laying of a pavement for Andrew Dold, and that the proofs show that said pavement was laid in the same manner as the City Hall pavement." So much of exception 21 as excepts to the report of the $900 as special damage is allowed. Exception 22, before cited, is broad enough to be an exception to the report of the $900 as damages. The remarks before made as to the allowance of profits apply to this $900. If entitled, in any event, to any allowance of damages in respect of the Dold pavement, the plaintiff must show the value of the patented invention as distinct from the value of the rest of the Dold pavement, and can in no event recover as damages the entire $900. The rest of exception 21 is disallowed.

An order will be entered disposing of the exceptions in accordance with this decision.

[For other cases involving this patent, see note to Schillinger v. Gunther, Case No. 12,456.]