MERCHANTS' STOCK & GRAIN CO. et al. v. BOARD OF TRADE OF CITY OF CHICAGO et al.†

(Circuit Court of Appeals, Eighth Circuit. October 24, 1912.)

No. 3,404.

**1. CONTEMPT (§§ 3, 4\*)—"CIVIL CONTEMPTS" AND "CRIMINAL CONTEMPTS" DISTINGUISHED.**

Contempts prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, are criminal and punitive in their nature, the government, the courts, and the people being interested in their prosecution; while those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce such rights, and to administer the remedies to which the court has found the parties to be entitled, are civil and remedial and coercive in their nature, the parties chiefly interested in their conduct and prosecution being the individuals whose rights and remedies they are instituted to protect and enforce.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 4; Dec. Dig. §§ 3, 4.\*

For other definitions, see Words and Phrases, vol. 2, pp. 1194–1195, 1747–1748.]

**2. CONTEMPT (§ 43\*)—CRIMINAL CONTEMPT—PROSECUTION—REAL PARTY IN INTEREST.**

While a criminal contempt involves no element of personal injury, being directed against the dignity of the court in which private parties have little or no interest, yet if a contempt consists in the party's refusal to do an act which the court has ordered him to do for the benefit or advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the agreement is in the nature of an execution to enforce the judgment, and the party in whose favor the judgment was rendered is the real party in interest in the proceedings.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 125–127; Dec. Dig. § 43.\*]

**3. CONTEMPT (§ 51\*)—SUMMARY TRIAL.**

Criminal contempts may be tried summarily, and need not be tried according to the regular course of criminal proceedings.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 140–142; Dec. Dig. § 51.\*]

**4. JURY (§ 21\*)—TRIAL BY JURY—CONTEMPT PROCEEDINGS.**

Accused in a prosecution for criminal contempt is not entitled as of right to trial by jury.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 134–142; Dec. Dig. § 21.\*]

**5. CONTEMPT (§ 34\*)—CRIMINAL CONTEMPT—PUNISHMENT—JURISDICTION.**

Courts of chancery and other courts without criminal jurisdiction may punish for a so-called criminal contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 99, 101–104; Dec. Dig. § 34.\*]

**6. CONTEMPT (§ 45\*)—PUNISHMENT—COURTS—JURISDICTION—VENUE.**

In a prosecution for criminal contempt, no change of venue can be allowed, since no court except that against which the contempt is committed has power to punish it.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 131, 132; Dec. Dig. § 45.\*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 21, 1912.

**7.** CRIMINAL LAW (§ 987*)—TRIAL—SENTENCE—ABSENCE OF ACCUSED.

For an actual criminal contempt accused may be sentenced in his absence without waiver or without his consent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2511; Dec. Dig. § 987.*]

**8.** CONTEMPT (§ 40*)—CONTEMPT PROCEEDINGS—JUDGMENT—FORMER CONVICTION.

Where an act which constitutes a contempt of court is also a crime, it may be punished both by summary action by the court and by indictment, and neither will bar the other.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 122–124; Dec. Dig. § 40.*]

**9.** WITNESSES (§ 293½*)—PRIVILEGE—CONTEMPT—OBLIGATION OF ACCUSED TO TESTIFY.

Const. Amend. 5, providing that no person should be compelled in any criminal case to be a witness against himself, does not apply to contempt proceedings, where the contempt charged does not also constitute a crime.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1011; Dec. Dig. § 293½.*]

**10.** CRIMINAL LAW (§ 662*)—NATURAL RIGHTS—RIGHT TO BE CONFRONTED WITH WITNESSES—CRIMINAL CONTEMPT.

Const. Amend. 6, providing that, in all criminal prosecutions, the accused shall enjoy the right to be confronted by the witnesses against him, does not apply to proceedings to punish a person for a criminal contempt of court, in which evidence may be taken before an examiner.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3, 1538–1548; Dec. Dig. § 662.*]

**11.** CONTEMPT (§ 66*)—WRIT OF ERROR—REVIEW—RULINGS ON EVIDENCE.

Where evidence in contempt proceedings was taken before an examiner, and objections made, but not ruled on, were not called to the attention of the court on a subsequent hearing, such objections were unavailable on writ of error.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

**12.** CONTEMPT (§ 66*)—WRIT OF ERROR—FINDINGS—REVIEW.

Objection to findings of the court in proceedings for punishment for criminal contempt could not be sustained on a writ of error, if there was any evidence to sustain the findings.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

**13.** CONTEMPT (§ 66*)—WRIT OF ERROR—EVIDENCE.

An objection on a writ of error in contempt proceedings that there was no evidence of guilt of the plaintiffs in error raised a question of jurisdiction, and was therefore reviewable.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

**14.** INJUNCTION (§ 228*)—CORPORATION—MANAGING OFFICERS.

Where a corporation's guilt of contempt in failing to comply with an injunction restraining its use of stock market quotations, except on certain conditions, was conclusive, and it appeared that the corporation's president, general manager, and assistant manager were frequently, if not constantly, in the company's office in the discharge of their official duties while the injunction was being violated, and that the corporation's business very largely consisted in the violation of the injunction, the evidence was sufficient to sustain a finding of guilt against such officers.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 484–495; Dec. Dig. § 228.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

15. CONTEMPT (§ 72*)—CIVIL AND CRIMINAL CONTEMPT—APPORTIONMENT OF FINE.·

While it is customary in criminal contempts to assign the entire fine to the government, and in strictly civil contempts to award it to the complainant, yet, where the contempt has been both of the court and of the rights of the adverse party in civil proceedings, it is proper for the court to apportion the fine between the government and the complainant.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 249–256, 273; Dec. Dig. § 72.*]

16. CONTEMPT (§ 66*)—WRIT OF ERROR—APPORTIONMENT OF PUNISHMENT— PREJUDICE.

Where defendants were properly convicted of a contempt which was not only criminal but also violated the rights of the complainant, defendants were not prejudiced by an order apportioning the fine between the complainant and the government.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223– 237; Dec. Dig. § 66.*]

Hook, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Contempt proceedings by the Board of Trade of the City of Chicago and others against the Merchants' Stock & Grain Company and others. From a decree convicting defendants of a criminal contempt and assessing fines directed to be paid one-fourth to the government ·and three-fourths to the complainants, defendants bring error. Affirmed.

Chester H. Krum, of St. Louis, Mo. (Henry S. Priest, of St. Louis, Mo., on the brief), for plaintiffs in error.

Henry S. Robbins, of Chicago, Ill. (Martin H. Foss, of Chicago, Ill., and Sears Lehmann, of St. Louis, Mo., on the brief), for defendants in error.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

SMITH, Circuit Judge. This case was heretofore submitted and decided by this court. Merchants' Stock & Grain Co. et al. v. Board of Trade et al., 187 Fed. 398, 109 C. C. A. 230. The Supreme Court of the United States having held in Re Merchants' Stock & Grain Co., 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584, that the contempt here in question was criminal as distinguished from civil, the case was. ordered reargued, and has been again submitted.

The board of trade of the city of Chicago brought suit against the Merchants' Stock & Grain Company, Francis J. Miner, Patrick A. Stephens, and numerous other defendants to enjoin them temporarily and perpetually from receiving, using, selling, or distributing, directly or indirectly, the quotations of complainant or any of them, and from having and obtaining or permitting any telegraph ·or other wire running into or through its, his, or their offices over which said quotations are passing until· they shall have lawfully acquired the right from complainant, or some telegraph company authorized by complainant to· distribute quotations. · November 3, 1909, a preliminary injunction was. ordered issued upon complainant giving bond in the sum of $5,000.

The following day, the bond having been given, a temporary writ of injunction issued substantially as prayed in accordance with the ruling in Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, Board of Trade v. Cella Commission Co., 145 Fed. 28, 76 C. C. A. 28, and McDearmott Commission Co. v. Board of Trade, 146 Fed. 961, 77 C. C. A. 479, 7 L. R. A. (N. S.) 889, 8 Ann. Cas. 759. The writ was served by the marshal on November 5, 1909, on the Merchants' Stock & Grain Company, and on Patrick A. Stephens, its chief telegraph operator, and on November 11th on Francis J. Miner, president and general manager of the company. On December 22, 1909, an information in contempt was filed in the civil suit against the Merchants' Stock & Grain Company, Francis J. Miner, Patrick A. Stephens, and others. The testimony was taken before a special examiner, who, as directed, reported the evidence without making any rulings on the admissibility thereof, or any findings of fact or conclusions of law. The court heard the matter upon his report, and some additional evidence, and adjudged the Merchants' Stock & Grain Company, Francis J. Miner, and Patrick A. Stephens guilty of contempt, fined them, and directed that three-fourths of the fine be paid to the complainants and one-fourth to the government.

The specifications of error are substantially:

First to third: That the trial court erred in appointing Robert M. Fulton examiner, and directing the testimony to be taken before him, and requiring the defendants to appear before the examiner and submit to the taking of testimony, and in refusing to vacate said order on motion of defendants, and in refusing the defendants a hearing upon the case on evidence adduced in open court.

Fourth to ninth and fourteenth to sixteenth assail the admission of certain evidence.

Tenth to the twelfth assail the findings of defendants' guilt.

Seventeenth alleges that there was no evidence of guilt.

Thirteenth is that the court erred in apportioning the fine between complainant and the government.

Eighteenth asserts that there is no sufficient finding of facts made by the judgment.

[1, 2] "Proceedings for contempts are of two classes: Those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights, and to administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The later are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 Atl. 182; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652;

People v. Court of Oyer & Terminer, 101 N. Y. 245, 247, 4 N. E. 259, 54 Am. Rep. 691; Phillips v. Welch, 11 Nev. 187, 190; State v. Knight, 3 S. D. 509, 513, 54 N. W. 412, 44 Am. St. Rep. 809; People v. McKane, 78 Hun, 154, 160, 28 N. Y. Supp. 981, 4 Bl. Comm. 285; 7 Am. & Eng. Enc. Law, 68. A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little, if any, interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings." In re Nevitt, 117 Fed. 448, 54 C. C. A. 622. This language was quoted by the Supreme Court with approval in Bessette v. W. B. Conkey Co., 194 U. S. 324, 328, 24 Sup. Ct. 665, 48 L. Ed. 997, and the rule was followed by this court in Clay v. Waters, 178 Fed. 385, 389, 101 C. C. A. 645, 21 Ann. Cas. 897, and in Merchants' Stock & Grain Co. v. Board of Trade, 187 Fed. 398, 109 C. C. A. 230.

In Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997, Mr. Justice Brewer said:

"It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determinative feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character, and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party."

No reason can be assigned why disobedience may not at the same time be of such a character as to indicate a contempt of the court and of all authority and a total disregard of the rights of the adverse party.

The first points made by the plaintiffs in error as before stated are with reference to the appointment of Robert M. Fulton as special examiner to take the testimony, and the refusal to set this order aside. It is contended that, under the authorities, this was a criminal contempt case, and that by its reference to a special examiner they were deprived of the privilege of being confronted with the witnesses against them as provided in the sixth amendment to the federal Constitution, and the question is, Does that provision apply to criminal contempt cases? Closely akin to this question is the one as to whether a criminal contempt case is within the provisions of the fifth amendment to the Constitution.

These two amendments read as follows:

"Art. 5. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for

the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

"Art. 6. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Conceding that the term "criminal contempt" is properly applied to a contempt punished by a punitive as distinguished from a coercive fine arising in an equity case, it does not follow that it is a criminal case within the meaning of the fifth amendment or a criminal prosecution within the meaning of the sixth.

Before entering on the discussion of this question, it seems wise to consider certain cases which involve the question of jurisdiction, because the turning question in them necessarily involves the question of whether contempts are criminal or otherwise, and thus in a measure they bear upon the question as to the rights of a defendant in a criminal contempt case. Anterior to the creation of the Circuit Courts of Appeals, the Supreme Court held it had no jurisdiction by appeal, writ of error, or habeas corpus in criminal contempt cases because of their criminal character. Ex parte Kearney, 7 Wheat. 38, 5 L. Ed. 391; New Orleans v. Steamship Co., 20 Wall. 387, 22 L. Ed. 354; Hayes v. Fischer, 102 U. S. 121, 26 L. Ed. 95; Ex parte Fisk, 113 U. S. 713, 718, 5 Sup. Ct. 724, 28 L. Ed. 1117; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; O'Neal v. United States, 190 U. S. 36, 23 Sup. Ct. 776, 47 L. Ed. 945. It held, however, that it had jurisdiction of a writ of error to a state court of last resort in a contempt case (Tinsley v. Anderson, 171 U. S. 101, 18 Sup. Ct. 805, 43 L. Ed. 91), and it entertained jurisdiction in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, of an appeal from the action of the Circuit Court in refusing a writ of habeas corpus in a criminal contempt case. It also held that it had jurisdiction by mandamus to direct the reinstatement of an attorney who had in a contempt proceeding been disbarred without notice and without ample opportunity to be heard. Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205. It held it had jurisdiction to review a civil contempt case arising in an equity case on appeal of the principal controversy after final decree. Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853; Hayes v. Fischer, 102 U. S. 121, 26 L. Ed. 95. And in Re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782, it held that whenever the circumstances imperatively demand that form of interposition the writ of certiorari may be allowed as at common law to correct excess of jurisdiction and in furtherance of justice, and the writ was allowed in that case to bring up the record in a contempt case.

In Durant v. Washington County, 1 Woolw. 377, 8 Fed. Cas. 128,

Mr. Justice Miller, delivering the opinion for the Circuit Court of the United States for the District of Iowa, said:

"We are satisfied, however, upon consideration, that a prosecution for contempt of court is a criminal proceeding, in which the government is interested as plaintiff; and that, whenever it becomes necessary for the government's attorney to appear to vindicate its authority as represented in the courts, it is his duty to do so."

When the act passed creating the Circuit Courts of Appeals, the Supreme Court held that such courts had jurisdiction of writs of error in criminal contempt cases. Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997. But it later held that the Circuit Courts of Appeals did not have jurisdiction on appeal if the contempt adjudged was interlocutory until after the final decree and then upon appeal therefrom. Doyle v. London Guarantee Co., 204 U. S. 599, 27 Sup. Ct. 313, 51 L. Ed. 641. It was held that, if the proceedings be for a civil contempt, an order made is in effect an interlocutory order, and can be reviewed only in equity cases on appeal from the final order. In the Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Heller v. National Waistband Co., 168 Fed. 249, 93 C. C. A. 551; Id., 168 Fed. 1020, 93 C. C. A. 670; Ex parte Isaac Heller, 214 U. S. 501, 29 Sup. Ct. 698, 53 L. Ed. 1060. And, where the adjudication of civil contempt follows the decree in the main case, still the remedy is by appeal, rather than by a writ of error. Wilson v. Calculagraph Co., 153 Fed. 961, 83 C. C. A. 77. In International Paper Co. v. Chaloux, 165 Fed. 436, 91 C. C. A. 465, in the Circuit Court of Appeals of the First Circuit, it was held that appeal would not lie in contempt proceedings in a suit at law against a party to the suit, nor would a writ of error lie because the judgment in contempt was not regarded as the final judgment in the case.

These cases have been reviewed because they are the principal ones in which the question has been discussed as to whether contempt cases were civil or criminal but the decisions have been with reference to what is here a collateral question, namely, the jurisdiction of the court. They are entitled to their just weight, bearing in mind that the questions involved were not whether the cases were criminal cases or criminal prosecutions within the meaning of the amendments to the Constitution.

[3] It is to be noted:

First. That criminal contempts are tried summarily, and not in the regular course or way.

[4] Second. That there is no right of trial by jury. Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; King v. Ohio & M. Ry. Co., 7 Biss. 529, 14 Fed. Cas. 539.

[5] Third. Courts of chancery and other courts without criminal jurisdiction can punish for so-called criminal contempt. Middlebrook

v. State, 43 Conn. 257, 21 Am. Rep. 650; Cartwright's Case, 114 Mass. 230; Rapalje on Contempt, § 3.

[6] Fourth. As there is no power in any except the court against which the contempt is committed to punish it, that is; as such court has exclusive jurisdiction, no change of venue can be allowed. Rapalje on Contempt, Par. 13.

[7] Fifth. For a criminal actual contempt the defendant may without a waiver and without his consent be sentenced in his absence. Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Middlebrook v. State, 43 Conn. 257, 21 Am. Rep. 650.

[8] Sixth. An act which is a contempt of court and also a crime may be punished both by the summary provision and by indictment, and neither will bar the other. Bishop's New Criminal Law, 1067; Chicago Directory Co. v. United States Directory Co. (C. C.) 123 Fed. 194; O'Neil v. People, 113 Ill. App. 195. In other words, the provision protecting him against being twice put in jeopardy does not protect him against being punished for contempt and under indictment for the same act. In view of these facts and others, it is not to be wondered that the Supreme Court has characterized contempt proceedings as sui generis. O'Neal v. United States, 190 U. S. 36, 23 Sup. Ct. 776, 47 L. Ed. 945; Bessette v. Conkey, 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997. It will probably appear that there are a number of other cases in which provisions as to criminal cases and criminal prosecutions do not apply to criminal contempts.

[9] First take the question of whether the fifth amendment prohibits a defendant in a contempt case from being a witness against himself. This question has not often been considered, but in Ex parte Gould, 99 Cal. 360, 33 Pac. 1112, 21 L. R. A. 751, 37 Am. St. Rep. 57, it was held that, under the state Constitution, the defendant could not be called as a witness against himself in a contempt case, but in that state contempt is made a misdemeanor by statute, and it was held that, if the court proceeds against one summarily, he could by being called as a witness in the contempt case be made to furnish evidence against himself in a criminal proceeding for misdemeanor. Clearly this case was within the rule in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, and under such circumstances he would not be compelled to testify. Very similar is the case of In re Nickell, 47 Kan. 734, 28 Pac. 1076, 27 Am. St. Rep. 315, where the contempt charged was also a criminal offense, and it was held the defendant could not be compelled to incriminate himself. Finally, in the case of Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, Mr. Justice Lamar said incidentally that:

"Without deciding what may be the rule in civil contempts, it is certain that, in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself."

This is followed in the opinion by the citation of numerous authorities, but they all go to the presumption of innocence and the quantity of proof required for conviction and no one of the cases

cited has any bearing on the question of whether the defendant can be called as a witness. It has been the practice from an early time to propound interrogatories to a defendant in a contempt case. Rapalje on Contempt, 123. Comment is not necessary upon the inconsistency between the proceeding of filing interrogatories by the prosecution to be answered by the defendant, and then holding that the defendant cannot be compelled to be a witness against himself. It is true in the case of Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, as in the cases from California and Kansas, that, if the plaintiffs in error were in fact guilty of the alleged conspiracy, they were criminally liable, and under the decision in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, could not be compelled to testify against themselves. On the other hand, in State v. Sieber, 49 Or. 1, 88 Pac. 313, it is held that one may be compelled to be a witness against himself in a so-called contempt case, but cannot be compelled to give answers that would convict him upon a distinct criminal charge. It may be safely said that there is no case to be found where it is held that this portion of the fifth amendment applies except where the contempt charged also constitutes a crime, and, of course, in view of the facts in the case of Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, anything there said to that effect must be limited by the facts and law of that case.

[10] We turn now to the question of whether the provision as to being confronted with the witnesses in the sixth amendment is applicable to a criminal contempt case. In State v. Mitchell, 3 S. D. 223, 52 N. W. 1052, it was distinctly held that a contempt case can be tried upon affidavits, and that there was no right to confront the witnesses face to face. O'Neil v. People, 113 Ill. App. 195; Seastream v. New Jersey Ex. Co., 69 N. J. Eq. 15, 59 Atl. 914. Judge Reed of Iowa in New Jersey Patent Co. v. Martin (C. C.) 166 Fed. 1010, ordered the evidence taken before a special examiner.

In United States v. Anonymous (C. C.) 21 Fed. 761, it is said:

"If the accused appears he is heard in any way that suits the convenience of the court, by an examination ore tenus, upon affidavits, or by propounding interrogatories. If he deny the contempt, the court, either for itself or by reference to a master, ascertains the facts upon the proof, either party examining witnesses by affidavit or otherwise."

This language was quoted with approval in Re Fellerman (D. C.) 149 Fed. 244.

In Counselman v. Hitchcock, 142 U. S. 547, 563, 12 Sup. Ct. 195, 198 (35 L. Ed. 1110), it was said in reference to the sixth amendment that:

"This provision distinctly means a criminal prosecution against a person who is accused and who is to be tried by a petit jury. A criminal prosecution under article 6 of the amendments is much narrower than a 'criminal case' under article 5 of the amendments."

In United States v. Zucker, 161 U. S. 475, 16 Sup. Ct. 641, 40 L. Ed. 777, it was held that in a suit against importers to recover

the value of merchandise alleged to have been forfeited to the United States because of false and fraudulent entry, affidavit and invoice the defendants were not entitled to be confronted with the witnesses against them.

In United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265, and the same against the same in 214 U. S. 386, 29 Sup. Ct. 637, 53 L. Ed. 1041, the United States Supreme Court imprisoned for varying terms six persons for contempt in connection with the lynching of the negro Johnson of Chattanooga upon testimony taken by a commissioner at Chattanooga. This was not objected to by the defendants, but that was a criminal contempt, and the contempt would in fact have been a criminal offense under the law of Tennessee. The court stood five to three, and yet it was never even suggested by the majority or minority that the evidence should have been taken in open court. It has been the practice to thus take evidence by commissioner in contempt cases in England for 200 years. 9 Cyc. 47. And the same practice has prevailed generally in this country. Rapalje on Contempt, 124.

It is not necessary to determine the question, but, if it were, grave doubt exists as to whether or not in a trial before the examiner in which the defendants appear and cross-examine the witnesses they are not confronted with the witnesses against them. State v. McO'Blenis, 24 Mo. 402, 69 Am. Dec. 435.

We conclude that the following additional differences exist between criminal cases, criminal prosecutions and criminal contempts:

Seventh. That the defendant is not entitled to be confronted with the witnesses against him in open court and, probably,

Eighth. That the defendant in a contempt case may be examined as a witness so long as he is not required to criminate himself in a sense other than to convict him of contempt.

[11-13] So far as the assignment of errors refers to the admission of certain evidence which it was claimed was objectionable, objections were made before the examiner, but not ruled upon, and were never called to the attention of the court, and no ruling on same was made by it, and they therefore cannot be considered, nor can relief be granted on the objections which assail the findings of the guilt of the plaintiffs. If there were any evidence to sustain such findings, the judgment of the Circuit Court was conclusive, but it is urged that there was no evidence of the guilt of the plaintiffs in error, and that this in effect raises a question of jurisdiction.

[14] The evidence of the guilt of the corporation is conclusive, and that Francis J. Miner was the president and general manager, and that Patrick A. Stephens was assistant general manager and chief telegraph operator. Both were present frequently if not constantly in the office of the company in the discharge of their official duties when the injunction was being violated. As very largely the business of the company consisted in the violation of the injunction, and as Miner and Stephens were in charge of the business, the evidence was substantial, and no question of the jurisdiction of the court arises.

[15] So far as the apportioning of the fine is concerned between the

plaintiff and the government, it is, of course, customary in strictly criminal contempts to assign the entire fine to the government, and in strictly civil contempts it is equally the custom to assign the entire fine to the complainant. Searls v. Worden (C. C.) 13 Fed. 716; In re Mullee, 7 Blatchf. 23, 17 Fed. Cas. 968; Doubleday v. Sherman, 8 Blatchf. 45, 7 Fed. Cas. 959; Schillinger v. Gunther, 15 Blatchf. 303, 21 Fed. Cas. 693; In re North Bloomfield Gravel Mining Co. (C. C.) 27 Fed. 795; Macaulay v. White Sewing Machine Co. (C. C.) 9 Fed. 698; In re Tift (D. C.) 11 Fed. 463; Indianapolis Water Co. v. American Strawboard Co. (C. C.) 75 Fed. 972; Ready Roofing Co. v. Taylor, 15 Blatchf. 94, 20 Fed. Cas. 365; Stahl v. Ertel (C. C.) 62 Fed. 920; Fischer v. Hayes (C. C.) 7 Fed. 96; Economist Furnace Co. v. Wrought-Iron Range Co. (C. C.) 86 Fed. 1010.

But, where the contempt has been both of the court and of the rights of the adverse party, it has been quite frequently the custom to divide the fine between the government and the injured party. Cary Manufacturing Co. v. Acme Flexible Clasp Co., 187 U. S. 427, 23 Sup. Ct. 211, 47 L. Ed. 244; s. c., 108 Fed. 873, 48 C. C. A. 118; Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 Fed. 774, 68 C. C. A. 476; Chicago Directory Co. v. United States Directory Co. (C. C.) 123 Fed. 194; Continental Gin Co. et al. v. Murray Co., 162 Fed. 873, 89 C. C. A. 563; Sabin v. Fogarty (C. C.) 70 Fed. 482. And in Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810, Lowell, Circuit Judge, said:

"The process of contempt has two distinct functions—one, criminal to punish disobedience, the other, civil and remedial, to enforce a decree of the court and indemnify private persons. In patent causes it has been usual to combine the two and to order punishment if it is thought proper, or indemnity to the plaintiff, if that is all that justice requires, or both."

McCrary, Circuit Judge, seems to have been of the opinion that the fine must go to the government. United States v. Atchison, Topeka & Santa Fé Railway Co. (C. C.) 16 Fed. 853, and he also held in Re Ellerbe (C. C.) 13 Fed. 530, that a criminal contempt is a criminal offense within the meaning of section 1014, United States Revised Statutes (U. S. Comp. St. 1901, p. 716).

In the Matter of Christensen, 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072, where half of the fine was assigned to the government and half to the injured party, the part going to the government was punitory and criminal, and so dominated the case that a writ of error would lie, and this holding applies to this case. In re Merchants' Stock & Grain Co., 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584. But it has not been determined by the Supreme Court whether the entire contempt case can be reviewed in error, or only that portion in reference to the punitory or criminal punishment imposed. It has been held by the Circuit Court of Appeals of the Second Circuit (Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 Fed. 774, 68 C. C. A. 476) that, under such circumstances, the whole contempt case will be reviewed on writ of error.

As the main case is not yet disposed of in the Circuit Court or its

successor, the District Court, this court would have no jurisdiction to review under a writ of error the civil contempt, and its jurisdiction rests entirely upon the one fourth going to the government, but, in the view taken of the case, it will not be necessary to pass upon the question as to whether the portion of the fine imposed for the benefit of the board of trade can be reviewed here as an incident to the consideration of the writ of error as to the government's portion of the fine. We have no doubt that, where the conduct of the defendant in a contempt case shows both a lack of respect to the court and a disregard of the rights of the adverse party, he may be punished in a single proceeding in which a part of the fine is awarded to the government and a part is awarded to the adverse party. The holding in the case of Gompers v. Bucks Stove & Range Co., that the contempt there in question was civil, and not criminal, was based in a large measure upon the prayers for relief in the petition, and no question is raised here in that regard.

The fines here have been imposed, and what concern have the plaintiffs in error with the order as to the disposition of the money after being paid? The government has not sued out a writ of error.

We therefore hold:

First. That the imposition of sentence was legal in this respect.

Second. That, if illegal, it was without prejudice to the plaintiffs in error.

[16] It is claimed that there is no sufficient finding of facts, but the finding is that the Merchants' Stock & Grain Company, Francis J. Miner, and Patrick A. Stephens have since the 12th day of November, 1909, willfully and intentionally violated said writ of injunction as alleged in said petition of said board of trade. This was sufficient. Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645, 21 Ann. Cas. 897.

No error of law appearing, it is ordered that the case be affirmed.

HOOK, Circuit Judge. I concur in the foregoing opinion, excepting that part in which it is said that probably a defendant in a charge of criminal contempt may be compelled to testify and incriminate himself. The question is not involved in the case before us and a different view was expressed, at least arguendo, in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 444, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.