### Bean v. Oceanic Steam Nav. Co., Limited.

*(Circuit Court, S. D. New York. June 20, 1885.)*

1. MASTER AND SERVANT—UNSAFE MACHINERY.
   Where an injury is caused by the use of unsafe machinery, which the employer knew, or in the exercise of ordinary care should have known, was unsafe, and the employe did not know was unsafe, from his inability to examine or know about the machinery, the employer will be responsible.

2. SAME—DUTY OF EMPLOYER.
   Ordinary care on the part of an employer implies, as between him and his employes, not simply the degree of diligence which is customary among those intrusted with the management of the machinery used, but such as, having respect to the exigencies of the particular service, ought reasonably to be observed. Known and foreseen dangers, not necessarily incidental to the business, are to be avoided if practicable, unless the employe knowingly accepts the risk.

Motion for New Trial.
*Herman H. Shook,* for plaintiff.

*Everett P. Wheeler,* for defendant.

SHIPMAN, J. This is a motion by the defendant for a new trial of an action at law, the jury having returned a verdict for the plaintiff for $1,250.

The plaintiff, while employed in discharging cargo in the hold of the steamer Republic, a vessel of the defendant, was injured by the falling upon him of a draught containing boxes of goods that were being hoisted out of the hold. This action was to recover damages for the injury. In stating the facts, I use, in part, the language of the defendant's counsel in his brief:

"The defendant employed a stevedore to discharge cargo, and he engaged gangs of men who were set to work at the different hatches; some being employed in the hold to get out the boxes and bails of goods and place them on the draught, and others being engaged on the deck in working the machinery by which they were lifted, and others again being employed in putting them onto the pier ready to be taken away. A machine called a winch was the means employed, in combination with block and tackle, to raise the cargo out of the hold. This winch was composed of a central shaft, with a drum at each end. The shaft was made to revolve by being geared onto the shaft of a small donkey engine. It appeared that when there was a necessity for discharging cargo rapidly, and therefore discharging by the means of two whips at the same time from the same hatch, the rope running over the block of each whip was coiled around one of the drum-ends. On the other hand, when there was no necessity for haste, the rope was fastened to the center axle, and then coiled around that. In this case it was impossible that the rope should slip if properly made fast, because of the attachment to the axle. In the case of its being coiled around the drum-ends, it was possible that it should slip if the man employed to coil the rope around the winch, and by means of this produce friction between the rope and the drum so that the rope would not slip upon it, did not coil the rope around a sufficient number of times, or if one of the coils should slip off so that the adhesion of the rope to the drum was not sufficient to counterbalance the weight of the load."

While the man at the winch was endeavoring to take an additional coil around the "end" in order to hold the weight steadily, a coil slipped off, the rope slipped, and the weight dropped. The steam-ship lines in the city of New York have for the last eight years used the two drum-ends in the same way in which the defendant used them and no serious accident has happened. Slight accidents to the workmen at the winch from the slipping off of the coil have occurred, which indicate that the use of the two ends is more unsafe than the use of the barrel. When heavy loads are drawn from the hold, the rope is attached to the center of the drum, because, in such cases, two or three blocks are used to divide the strain, and such an arrangement requires a greater length of rope than can be used upon the "ends." The loads that were being taken out at the time of the accident were not heavy.

The charge to the jury was to the effect that the question for their determination was whether the injury was caused by a lack of ordinary care on the part of the defendant in attaching the rope to the winch in an unsafe method, or was attributable to the ordinary risks which are incident to a safe and prudent system, one of which is the carelessness of a co-employe. Ordinary care and the obligations of the master in regard to machinery to be used by his employes were defined in this language of the supreme court in *Hough* v. *Railway*

*Co.* 100 U. S. 213, and the jury were instructed that employers were responsible if an injury happened by the use of unsafe machinery which the employer knew, or in the exercise of ordinary care should have known, was unsafe, and the employe did not know, from his inability to examine or know about the machinery.

The jury, by their verdict, negatived the theory that the injury was caused by the negligence of the attendant at the winch, and found that it occurred by reason of the negligence of the defendant in causing the winch to be used in an unsafe manner, the plaintiff being excusably ignorant of the unsafeness.

The principal point which the defendant makes is that the question of liability for the use of the drum-ends "is not properly a question of negligence in the just sense of the term. The use was intentional, and designed to effect a certain purpose, to-wit, the more rapid discharge of the cargo. The possibility of slipping was a risk incident to this use. The point for the court to decide is whether the company is liable in damages for an accident incidental to the use of approved appliances for the discharge of cargo in cases where the use of these appliances involves a somewhat increased danger as compared with the use of the old appliances." This ingenious way of stating the question disregards the requirements which the supreme court has recently declared are properly imposed upon employers with respect to the selection of machinery to be used by their workmen, and considers the obligation as satisfied if the accident is incidental to the use of approved, though somewhat dangerous, appliances. The defendant would make the employer's liability hinge upon the question whether the appliances were the approved or customary ones; and if they had received the general sanction of employers, and had answered the purposes which they were designed to accomplish, the duty of ordinary care is complied with.

The requisites of ordinary care are not satisfied by such a rule. "Ordinary care on its [a railroad company's] part implies, as between it and its employes, not simply the degree of diligence which is customary among those intrusted with the management of railroad property, but such as, having respect to the exigencies of the particular service, ought reasonably to be observed." *Wabash Ry. Co.* v. *Mc-Daniels,* 107 U. S. 454; S. C. 2 Sup. Ct. Rep. 932. Known and foreseen dangers, not necessarily incidental to the business, are to be avoided, if practicable, unless the employe knowingly accepts the risk. At this point the defendant says that the use of the two ends of the winch is necessary to the business, and that while this system involves a certain degree of danger beyond that from the use of the central drum, the necessities of commerce have called for the use of double winches, and therefore the danger is incidental to the business. It is by no means clear to my mind that speed and safety cannot be combined by the use of drum-ends which are so made as to hold the rope firmly. If the present method of constructing the "ends" is at-

tended with danger, such danger can be avoided without serious expenditure of money or of thought.

It is true that if the employe knows, or has good reason to know, when he enters upon the employment, that dangerous appliances are being used, he assumes the risk of the injury which is incidental to such use; but, in this case, the finding of the jury is to the effect that the plaintiff was 'ignorant that the two ends were being employed. The defendant insists that the finding was against the weight of the evidence. Upon the trial of the case, the attention of both court and counsel was principally directed to the question of the safety of the method which the defendant used, and both evidently thought that upon that question the case turned. Upon reading over the testimony I think that the jury might have erred in not finding for the defendant upon the point of the plaintiff's knowledge or character of the appliances, but the testimony on that subject was not of the strength which should justify granting a new trial.

The motion is denied.