## THE UNITED STATES

*v.*

# DR. VICTOR COLL Y CUCHI, CAYETANO COLL Y CUCHI, WILLIAM R. BENNETT, AND FRANK F. HARDING.

San Juan, Criminal, No. 3141.

Opinion filed April 17, 1923.

_Hon. Ira K. Wells,_ United States Attorney, and _F. H. Dexter, Esq.,_ for defendants Cayetano Coll y Cuchi and Dr. Victor Coll y Cuchi.

_Mr. J. A. Loret_ and _Willis Sweet, Esq.,_ for defendant William R. Bennett.

_Messrs. Miles M. Martin_ and _Hugh R. Francis_ for Frank F. Harding.

ODLIN, District Judge (orally), delivered the following opinion:

It seems to me proper before entering upon a discussion of this very unpleasant case that a few preliminary observations are in order. In the first place it must be observed that Felix Torres is not on trial. He is not a party to this proceeding in any way. He may be a man worthy of belief or he may be a man unworthy of belief, but that is by no means conclusive of this case. It seems clear to me that it is just as improper to tamper with a witness who may prove to be worthless as to tamper with a witness who may prove to be of unquestionable veracity. If Torres is a perjurer he, of course, deserves

punishment, but this punishment must come through lawful means. He is not to be entrapped.

Another observation that seems to be pertinent is that the action of the district attorney, Major Wells, in this matter, is not in question. He is responsible directly to the Attorney General of the United States.

I have no fault to find with the law which was read to me so earnestly by Mr. Dexter, in his opening address in connection with the remarkable case [Sharon v. Hill] in the state of California, many years ago, reported in 24 Fed. 726, in which Judge Sawyer held that although the party involved in that proceeding might be held guilty of contempt, the conditions surrounding the case were not such as to impress him with the necessity or wisdom of proceeding by indictment. The law as laid down by Judge Sawyer in that decision is in exact harmony with the procedure which has been had in the case now before this court for decision. It was in the powers of the authorities representing the government of the United States to direct a procedure either by indictment or by contempt.

When the report of the grand jury reached me, in the absence of Governor Reily from this Island, and it appeared to me that he might be involved in these proceedings, I thought it advisable, and I still believe that I acted correctly, in withholding that report from the public, and in turning it over to the district attorney, who saw fit to submit the same to Washington, and he acted under instructions from Washington, as it was his duty to do, in instigating this present proceeding for contempt of court. Therefore, the plea made by Mr. Dexter, it seems to me, has really no force because not only in instances of this kind has the United States the option, but it must also

be observed that the statute creating a criminal offense is somewhat narrower than the rules which control courts in matters of contempt, in order to protect their own powers. In other words, as Judge Grubb points out very clearly in the important case [United States v. Huff] which I have already cited in 206 Fed. page 700, there may be acts of misbehavior obstructive to the proper administration of justice not committed in the actual presence of the court, but so near the presence of the court as to obstruct the administration of justice, and this phrase applies to all acts of misbehavior whose natural tendency and effect is to interfere with the administration of justice, wherever these acts may be committed. In other words, and referring again particularly to the language of this same judge, on page 711, where he says that courts comprise not only judges and the jurors, but also comprise witnesses, clerks, examiners and marshals. They are, in a sense, present, whenever any of their officers are engaged in the performance of their functions, and whether the court is in formal session for the trial of cases or not. Any attempt whatever made to induce a witness to refuse to testify or to testify falsely, or a juror to depart from his duty, or a judge to decide unlawfully, is likewise an obstruction to the administration of justice. In other words, there can be a contempt of court without any threat of a witness, there may be a contempt of court by misrepresenting things to a witness, by misleading him, by causing his mind to dwell upon matters nonexistent, or to impress upon him conditions which are untrue, in the hope that he may be influenced thereby, and such an act, while it may not fall within § 268 of the Judicial Code, in forming the basis of an indictment, it would, unquestionably, in my

mind, be a contempt of court. I think that a careful reading of the decision of Judge Grubb in 206 Fed. and the opinion of Judge Walter Smith in [Merchants' Stock & Grain Co. v. Board of Trade] 120 C. C. A. 582, 201 Fed. 20, state that principle beyond any question.

Then the matter of argument that Felix Torres should be entirely discredited because of the giving of immunity to him by the district attorney. That is a matter wholly within the discretion of the district attorney. He may have acted wisely or he might have acted unwisely in granting that immunity to Felix Torres, but that he had a right to do so, exercising his own judgment, believing that the interests of the United States would be subserved thereby instead of being injured thereby, is a matter this court cannot question. It rests wholly with him and with his responsibility to the officer who is his direct superior. There has been nothing in this case, so far as I have been able to observe, to show that such discretion was used unwisely. That question cannot be determined until Felix Torres comes before this court as a witness in the main case. But as I remarked during the trial, I would not convict any man of contempt of court on the testimony of Felix Torres alone, as I remarked before, the conditions with which he was surrounded, the fact that he himself had been indicted, the fact that although that indictment had not been actually dismissed he had been used as a witness before the grand jury and had been promised immunity, might have had such an influence upon him as to make his testimony, if by itself, insufficient upon which to base a judgment of conviction against other parties.

Then I wish to make a few remarks about the witness Juan

Quiñones, for twenty-four years a valuable officer of the Insular police. There may be great force in Judge Sweet's argument that the chief of police was under no obligation to pay any attention to what Juan Quiñones told him, and that it being a quasi military force, suggestions on the part of Juan Quiñones were out of order until called for. Judge Sweet may be correct. I do not pose as a military expert, but I do say this, that if I had been chief of police under the circumstances surrounding Colonel Bennett at the time these detectives were called for by Dr. Victor Coll y Cuchi, and if Juan Quiñones had given me a tip or a wink to go carefully, I would have thanked him for it, and I wish publicly to express my thanks to Juan Quiñones for his efforts to have this thing stopped, which efforts, if they had been successful, would have prevented this disagreeable case ever coming before this court. If I were a member of the legislature of Porto Rico, I would introduce a bill this afternoon, to increase the salary of Juan Quiñones, but inasmuch as I do not possess that authority, I desire publicly to express my thanks to Juan Quiñones for his efforts to stop this case, which he endeavored to do. I think Juan Quiñones showed more sense, more careful consideration for this court than all the others who have been connected with this case.

Then I wish to dwell upon another matter, most unpleasant, before I reach the decision as to the individual defendants in this proceeding. And that is that this case has developed and brought to the light certain unpleasant matters indirectly connected with the affairs out of which this case sprung, which shows that there exists upon the part of a group of citizens in this Island a marked attitude of strong hostility to this court.

I refer in no way to myself as the judge of this court. The treatment that has been accorded me ever since I came here, two years ago, has been cordial and agreeable and fair in every way. But there is a small group of citizens in this Island who are opposed to this court as an institution. They would like to see it abolished. They do not like its methods. I think that group is small. I believe this court is respected as an institution, laying aside all matters of the personnel, by the masses of the people who reside in the Island of Porto Rico. But events have occurred, since I assumed charge of this court, which show the absolute necessity resting upon me, as long as I stay here, of using every power that the court possesses in the protection of its jurors and witnesses from interference of any improper kind. There is the case of Shanton that occurred a year ago [12 Porto Rico 379] where he came in and confessed a contempt of this court, admitted it, received a light sentence, and a certain element proceeded to make a hero out of Shanton. Then on October 21st, 1922, came the brutal attack on Harold Graham, foreman of a grand jury. We never have been able to find out who committed that attack, on the very night that an indictment was brought into this court, one of the defendants in said indictment being Dr. Victor Coll y Cuchi, who is a defendant in the present contempt proceedings pending here today. There is not the slightest doubt in my mind that there are many citizens, or at least a reasonably large number of citizens in this Island, who know who committed that assault on Harold Graham, but either through fear or a desire that the assailant be not punished, have furnished this court with no information on which it could act, even though a liberal reward was offered therefor. Then there were certain juries

that have brought in indictments that were against this crowd I speak of, and the businesses of those jurors have been boycotted; so this court has been urged by citizens to leave them off the jury, as they fear their business may be injured. Then came the indictment of a prominent member of the bar of this court, not here in San Juan, for as mean an offense as a Porto Rican could commit, swindling Porto Rican soldiers out of their war risk insurance money, and shortly before the day set for trial, the bar association of the city where he lives, has a meeting and elects him president, so as to create around his head a halo of innocence which will tend to prevent a verdict of guilty when the case comes for trial. Then the present case, which I have the unpleasant duty of deciding. There was one point made by Mr. Dexter with which I most thoroughly agree, and that is that no man must be convicted for contempt of court unless the judge is absolutely satisfied, beyond a reasonable doubt, that such a man is guilty, and I shall strictly follow that rule in deciding the present case. Then there was another point of law urged by Major Martin, in his argument for the defendant Mr. Frank Harding, which I also think is perfectly sound law and which I purpose strictly to follow in reaching a decision in this case, and that point is that the present proceeding is not one of conspiracy and that no man of the four now before this court can be punished for the act of any one of the other three. In old, homely, plain English, "Every tub stands upon its own bottom."

Applying these principles and rulings in the grave responsibility that rests upon me, that I must convict no man unless I am satisfied beyond a reasonable doubt that he is guilty, and that the intention to do that which was done, the entrapping

of a witness, exists, I pass to consider this case just the same as though there were four separate cases before me, taking up each defendant in turn.

First as to Dr. Victor Coll y Cuchi. Contrast him with the witness, Felix Torres. I don't propose to convict Dr. Victor Coll y Cuchi on the testimony of Felix Torres. By no means. But I do not propose to disregard and throw into this bay the testimony of Felix Torres, because there were so many admissions by Victor Coll y Cuchi, himself, that fit in and tallied with what Felix Torres said, that I am obliged to hold that Felix Torres told some things that were true. Victor Coll y Cuchi says that this tampering with Felix Torres, on December 7th, the very day that Major Wells sailed for United States, was a coincidence. It may be. It was a most remarkable coincidence. Who would be the most likely to know about the Major's departure for the Uinted States, Felix Torres, running a little restaurant in Caguas, twenty miles from San Juan, or Victor Coll y Cuchi, an educated man, professor of history in the University, interested in politics, careful reader of the newspapers, and thoroughly cognizant with everything going on here; who would be the most likely to know it? Then that very significant piece of paper which Victor Coll y Cuchi admits was in his own handwriting. He says it was a mere series of notes, names that he, himself, took down because they were based upon information furnished him by Ramon Valcourt Questall, but he never brought Ramon Valcourt Questall here to verify what he said. The fact that those notes were made in his own handwriting, the fact that they brought into this case the ridiculous idea of Acting Governor Juan B. Huyke being connected in liquor business down in Yabucoa; is it

likely that such a silly story as that would have originated with Felix Torres? I cannot believe it. I believe that story originated with Victor Coll y Cuchi in order to impress Felix Torres with the importance, influence, and power that Victor Coll y Cuchi possessed, coupled with the fact of the peculiar relations existing at that time between Victor Coll y Cuchi and Governor Huyke. Was Felix Torres yearning for any favors from Governor Huyke? Victor Coll y Cuchi was. Victor Coll y Cuchi had been suspended from his office as professor of history in the University of Porto Rico, and he was seeking to be restored to that position and he saw Acting Governor Huyke to aid him in his efforts for such restoration. And his peculiar mind conceived the idea that he might possibly influence Governor Huyke in assisting him in his own efforts to be returned to his position if he could make Governor Huyke believe that somebody was trying to frame a liquor case on him. To my mind it is inconceivable to believe that that story originated with Felix Torres. I am obliged to hold it originated with Dr. Victor Coll y Cuchi and his idea was to get some sort of influence over Governor Huyke which might induce the latter to lend a willing ear to the ambitions of Victor Coll y Cuchi in his desire to be restored to his position. I am not going to convict Victor Coll y Cuchi because he was convicted of violating the Harrison Drug and Narcotics Act, in this court, some years ago. The fact that he was convicted of that in no way bears upon his guilt or innocence in this case. But between a man who has been convicted of an offense of that kind and Felix Torres, I would as soon believe the latter, particularly as Felix Torres had very little to say in this case and Victor Coll y Cuchi had very much. Now, Victor Coll

y Cuchi, on his own testimony, admitted that he knew that Torres had taken an active part in procuring the indictment against him in this case for conspiracy, and after he learned this fact he arranged to have Torres come to his own home. Victor Coll y Cuchi knew about the letter Torres had been given by Major Wells, because he referred to that letter in one of the several different statements secured in regard to what had taken place in his own home in Santurce, I cannot fail to be impressed by the undisputed testimony, that while one of these detectives prepared something on a typewriter, there has never been any evidence of their signing it. But Victor Coll y Cuchi represented that they had signed it, and not only that, but he delivered to his own brother one form of this alleged statement of what had occurred in his own home in Santurce, and when he went to translate it into English from the Spanish copy, he omitted parts of it, and, furthermore, delivered a third copy to Jose Leon, which bore the date of November 11th, when the actual interview with Felix Torres occurred on December 7th. A very incorrect teacher of history of Porto Rico. Therefore, without dwelling upon this matter longer, I am obliged to hold Dr. Victor Coll y Cuchi guilty as charged in this information. Because I have not the slightest doubt in my mind that every essential averment of this information has been proven with respect to Dr. Victor Coll y Cuchi.

Now we pass to the case of the defendant next named in this information, Mr. Cayetano Coll y Cuchi. He has sworn that he carried to John L. Gay, acting United States district attorney, on December 12th, the same paper that he received from Victor Coll y Cuchi, meaning the translation or what purported to be a translation into English of the Spanish copy,

which had been lost, so Victor Coll y Cuchi says. I must remember that Cayetano Coll y Cuchi was absent from this Island when the indictments were found against his brother, Victor Coll y Cuchi. The evidence in this case satisfies me that Cayetano Coll y Cuchi was misled and deceived by his own brother. That is a hard thing to say, but a careful study and analysis of this evidence convinces me of that fact. Cayetano Coll y Cuchi was almost inexcusably careless. A lawyer of his experience should have seen first that the paper which was being translated into English and carried to John L. Gay, was a genuine paper and not a garbled, incomplete copy of some other paper. But, inasmuch as Victor Coll y Cuchi had prepared at least three separate versions, in writing, of what purported to have occurred in his own home in Santurce; one which was unsigned, in English, delivered to John L. Gay; one which was signed on the typewriter with the names of the two detectives, but not signed by the detectives themselves; and another which Victor Coll y Cuchi delivered to the witness Leon; and, inasmuch as he had been instrumental in having a third copy prepared by the detectives, but not signed by any person whatsoever, being exhibit "C" in this record, I repeat that I think it is quite possible, more than possible, that Cayetano Coll y Cuchi was misled by his own brother, and that his actions in going to John L. Gay were proper and not improper. Cayetano Coll y Cuchi was also inexcusably careless in inserting in his answer, filed in this court, a statement he did not intend to put in there. I am astonished that a lawyer of his acumen, skill, and foresight should say here on the witness stand that he had filed in the office of the clerk of this court a paper containing a

statement he did not intend to put in there. That is not contempt of court although it is an inexcusable method of practising law. But in order to convict him of this offense I would have to hold that he knew everything Victor Coll y Cuchi had done, that he approved of it, and was assisting Victor in securing the evidence of Torres, that he went to John L. Gay with an improper purpose, using a paper he knew was false and illegally obtained. But there is no direct evidence in this case that Cayetano Coll y Cuchi knew anything about Felix Torres until December 12th when he went with his own brother to the office of Mr. Gay, assistant United States attorney. Therefore, being unable to say that there has been a dishonest purpose, which must be the basis of guilt, I find Cayetano Coll y Cuchi not guilty.

Then we come to the case of William R. Bennett. After Colonel Bennett made his statments on the witness stand, in this court, in his own defense, the first thing that entered my mind was why he did not go into those details before the grand jury. That to me is something very mysterious. The statements made by Colonel Bennett before the grand jury were so vacillating, so incomplete, so unsatisfactory, there were so many omissions in his story to the grand jury, that if he had been as open, frank, and candid in the grand jury room as he was before this court, I believe he would not have been a defendant in this case. Colonel Bennett's testimony before me in open court impressed me as being absolutely true when he said that his mind all this time was on the question of the peculiar attitude of Governor Reily, in connection with threats that had been made against his personal safety. And also that he had in mind certain anonymous letters, one of which has

been introduced in evidence in this case, which itself carried a threat against the life of Governor Reily. Now I know that those statements were true as Colonel Bennett told them, because Governor Reily told me the same story himself; that he was afraid of his life, and I tried to calm him myself and tried to drive those ideas out of his head and tried to tell him that Porto Rico was not Haiti, where they killed sixteen rulers in forty years; that this was an Island inhabited by a different class of people, and I thought his life was just as safe here as was the life of Judge Foote, sitting up in the Insular district court, or of my own; that I believed these threats were made by irresponsible people with the hope of frightening him so he would not come back to this Island. But I could not make him believe it, so I knew the story Colonel Bennett told here about these threats was absolutely true, and I can well imagine that Colonel Bennett, even though he might have known that Victor Coll y Cuchi was under indictment in this court, was so situated that his mind might, even in spite of the wink of warning of Juan Quiñones, have been dwelling upon Governor Reily and, furthermore, I know that Colonel Bennett testified with absolute truth when he spoke about the close political alliance between the two brothers Coll on one side and Governor Reily on the other. I knew that because Governor Reily told me the same thing himself. And I told Governor Reily that although I was not implicated in local politics I did not believe this alliance would bring any glory or fame to either the brothers Coll or to Governor Reily. And I do know that alliance existed and I do know that at that time the relations between the two Colls and Governor Reily was extremely close, and to my mind it is perfectly clear that the Chief of Police,

William R. Bennett, may have had his mind, and probably did have his mind, dwelling upon these matters and that he absolutely forgot and did not think for the moment that Victor Coll y Cuchi was under indictment in this court, and that these detectives were to be used for something in connection with that indictment. Therefore, being satisfied as I am that William R. Bennett acted according to his own judgment in this matter, in allowing these detectives to go there and being convinced that the allegation that he knew of the improper use that these detectives were to be put to, has not been proven, I find William R. Bennett not guilty.

As to the remaining defendant; Frank F. Harding. There is very little to say about this case. His own testimony before the grand jury was very "wabbly" and unsatisfactory. But in this court I was impressed by his absolute candor and good faith. I think Frank F. Harding in this court told the whole truth and the absolute truth when he said his mind was on liquor, that he knew Caguas as a headquarters for bootleggers, and he had been active in trying to uncover serious violations of the national prohibition law, and that he had learned that it was sometimes possible to get evidence against a bootlegger by using another one, and his good faith in this matter impressed me absolutely. I think he was the best witness and the most satisfactory of all four defendants, and for that reason I find him not guilty.

The judgment of this court is that Victor Coll y Cuchi suffer imprisonment for sixty days in the district jail at Arecibo and to pay all the costs.

The other defendants, Cayetano Coll y Cuchi, William R. Bennett, and Frank F. Harding are discharged.