## In re ECKHAUS.

(District Court, E. D. New York. July 9, 1926.)

1. **Bankruptcy** ⊜=11—On application to court to enforce order of court of another district, directing imprisonment for contempt, court must assume other court had jurisdiction and recognize as res judicata facts found.

On application by a trustee for enforcement of an order, made by the court in another district, directing imprisonment for contempt, the court must assume that the court making the order had jurisdiction and recognize as res judicata the facts found as the basis of the order.

2. **Bankruptcy** ⊜=11—Court of one district may enforce order of court of another district committing for contempt (Bankruptcy Act, § 2, cl. 20, as added by Act June 25, 1910, § 2 [Comp. St. § 9586]).

Under Bankruptcy Act, § 2, cl. 20, as added by Act June 25, 1910, § 2 (Comp. St. § 9586), a court of bankruptcy of one district has jurisdiction to aid in enforcement of an order of a court of another district, committing for a civil contempt, by making such order its own, or perhaps by directly enforcing the order of the other court.

**3. Bankruptcy ⬅136(2)—Order committing for contempt for failure to obey order to turn over property is for a civil contempt.**

An order committing a person for contempt for failure to obey an order to turn over property is for a civil contempt, and is not as punishment, but is intended to be remedial by coercing the defendant to do what he has refused to do and what the court has found he has the ability to do.

**4. Bankruptcy ⬅136(2)—Present ability of defendant to obey "turn over" order must be ascertained, before entry of ancillary order of imprisonment for contempt, for disobeying such order.**

Where a considerable time has elapsed between the entry of an order of imprisonment for contempt for failure to obey an order to turn over property and an application to the court of another district for enforcement of such order, the requirements are the same as though the application to imprison had been made in the first instance to the latter court, so far as concerns the ascertainment of the present ability of defendant to comply with the "turn over" order.

In Bankruptcy. In the matter of Samuel J. Eckhaus, bankrupt. On order against Max Yawnick and Joseph Lauterstein to show cause why an order of the District Court for the Southern District of New York, committing them for contempt, should not be made the order of this court, and objection by respondents to jurisdiction. Objection overruled, and motion for order granted subject to right of respondents to be heard on the merits.

Emanuel M. Kaiser, of New York City, for the motion.

Joseph W. Gottlieb, of Brooklyn, N. Y., opposed.

INCH, District Judge. The trustee (duly appointed in the Southern District) of the above-named bankrupt (duly adjudicated in the Southern District of New York) obtained, in this court (Eastern District) an order requiring Max Yawnick and Joseph Lauterstein to show cause why a certain order of the District Court for the Southern District of New York, dated May 20, 1926, finding the said Yawnick and Lauterstein guilty of contempt for failure to comply with a turn over order (previously issued by the District Court for the Southern District of New York), and directing their commitment for said contempt, should not be made the order of this court, etc. This order to show cause apparently was duly served on Yawnick and on Lauterstein.

On the return day Yawnick and Lauterstein appeared "specially," and objected to the jurisdiction of this court.

The respondent Yawnick also submitted an affidavit in which, while he asserts his appearance is only "special," he goes somewhat into the question of his present possession of assets. Very possibly this affidavit could be construed as aimed at the merits.

However, I shall not so construe it, but shall take up the real and rather important issue before me; that is, whether or not this court (Eastern District) has jurisdiction sufficient to make such order of the Southern District its order.

Before deciding this issue, it may be well to briefly state what has gone before in this much litigated matter.

It seems: That the above-named Eckhaus had previously disposed of his property to said Yawnick and Lauterstein, in alleged violation of a state "Bulk Sales Act." Thereafter Eckhaus became a bankrupt in the Southern District and a trustee was appointed. This trustee then went before that court and asked for a "turn over" order, directing Yawnick and Lauterstein to turn over to the trustee this property so purchased by them or its value in the sum of $5,000. Yawnick and Lauterstein appeared specially and objected to the summary jurisdiction of the court. This question and others were apparently referred to the referee to determine. The referee thereafter determined that Yawnick and Lauterstein's claim was merely colorable and not adverse, and that they should turn over forthwith to the trustee the said goods or in lieu thereof $5,000. That thereafter Yawnick and Lauterstein sought to review the said "turn over" order, and on or about January 19, 1926, said application was denied, with an opinion, by a District Judge of said district, and no appeal or petition to revise was taken. That on February 6, 1926, the "turn over" order was duly served on Yawnick, and on Lauterstein on February 10, 1926. That on or about April 7, 1926, Yawnick and Lauterstein, having failed to comply with said order, that court issued an order which was duly served, why Yawnick and Lauterstein should not be punished for contempt. According to the papers submitted, Lauterstein apparently defaulted, but Yawnick appeared and opposed the motion.

While this motion was pending, and on or about April 29, 1926, Yawnick, who had shortly before been adjudicated a bankrupt on his voluntary petition in bankruptcy, filed in this Eastern District, where he resided, applied to this court for an order staying the trustee from proceeding further. This was done, apparently on the theory that said trustee was unduly interfering with assets of

Yawnick over which this court (Eastern District) had obtained jurisdiction by the filing of said petition and adjudication. This motion was denied by this court, in a memorandum opinion, dated April 29, 1926, and filed with the papers, but not yet reported.

A reference should be made to the statements therein contained, for some of the questions there raised and disposed of are still applicable.

Upon the denial of said motion, the trustee then proceeded before a judge of the Southern District, and thereafter, on May 20, 1926, that judge duly made and entered an order finding both Yawnick and Lauterstein guilty of contempt for their disobedience, as above set forth, and directed that they each be committed and be imprisoned until they complied with said order.

This order, punishing for contempt, apparently has not been served upon either Yawnick or Lauterstein, although it was served upon their counsel, for the very good reason that both Yawnick and Lauterstein are residents of the Eastern District of New York, a fact that would seem to have been well known to the trustee all the time.

The trustee thereupon proceeded to obtain from this court (Eastern District) upon his petition, duly verified, and setting forth many of the above facts, the said order to show cause why the said contempt order of the Southern District of New York should not be made the order of this the Eastern District of New York and the said Yawnick and Lauterstein imprisoned by this court accordingly.

It also appears that the respondent Yawnick had submitted an affidavit to the judge in the Southern District of New York, before whom said contempt proceeding was pending, in which he claimed that he was unable to comply with the order, and said judge, in granting the motion to punish him for contempt, said "the affidavit submitted in opposition is utterly insufficient."

[1] As I have already indicated, no appeal has been taken from any of the proceedings in the Southern District of New York, and not only would the orders entered in that district appear to be res adjudicata as to the issues then before that court, such as possession at that time, and the duty to turn over to the trustee the property in question, but it seems to me that this court should and must assume, as a court of equal jurisdiction, that the Southern District bankruptcy court had jurisdiction to make the summary order under the circumstances. Commercial Union of America v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937.

Personally, as stated in my memorandum of April 29, 1926, above referred to, I have some doubt as to the jurisdiction of a bankruptcy court to make a summary order where the property has never been in the possession of the trustee and where its transfer is claimed to be illegal, solely because a state statute, such as a Bulk Sales Act, has not been complied with, particularly where such "acts" seem to indicate the procedure to be followed, such as making the vendee a receiver or trustee, etc.

[2] However there has also been a fraud found, whether on the vendor or not I am also concluded from finding, and therefore the sole question before me, in view of the failure of Yawnick and Lauterstein to review this question of jurisdiction, is whether or not this bankruptcy court (Eastern District of New York) has jurisdiction to make the order of that bankruptcy court (Southern District) its order, for the purpose of enforcing said order in this district.

Bankruptcy courts can, by ancillary proceedings, aid each other in the collection and administration of assets for the benefit of the creditors of a duly adjudicated bankrupt in one or the other of said courts. Amendment of June 25, 1910, subd. 20, § 2, of the National Bankruptcy Act (Comp. St. § 9586). This ability to aid was recognized prior to said amendment. Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969.

[3] The facts presented to me and apparently presented to the District Court, Southern District, indicate a civil rather than a criminal contempt.

The distinction should not be overlooked. Stein v. U. S. (C. C. A.) 9 F.(2d) 68. There often seems to be a mistaken notion that, if a person fails to obey an order, he can be put in jail as a "punishment," regardless of facts explaining such disobedience. This is not accurate.

Where a court has directed a person to "turn over" property or do some other act within his found present power to perform, and that person willfully refuses to obey he may be imprisoned as long as such willful disobedience continues or until the court otherwise orders.

This simply means that the person proceeded against has it at all times within his power to avoid any or all imprisonment. Such imprisonment is not ordered, in the first instance, until the court, in some circuits, has been satisfied by a fair preponderance of evidence (Samel v. Dodd, 142 F. 68, 73 C. C. A. 254), or, as would appear to be the rule in this circuit, by proof beyond a reasonable

doubt (In re Chavkin, 249 F. 342, 161 C. C. A. 350), that the person had, at the time of entry of the order, the power to obey, and that his failure to obey was willful (Stuart v. Reynolds, 204 F. 709, 123 C. C. A. 13).

A person likewise may be in contempt for willfully obstructing the administration of an estate. It is a question of fact and procedure. Loubriel v. U. S. (C. C. A.) 9 F.(2d) 807, at page 809; In re Swan, 150 U. S. 637, 14 S. Ct. 225, 37 L. Ed. 1207.

" 'Contempts are neither wholly civil nor altogether criminal.' And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. Conkey, 194 U. S. 329 [24 S. Ct. 667, 48 L. Ed. 997]. * * * It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. * * * But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the courts." Gompers v. Bucks Stove & Range Co., 221 U. S. 418, at pages 441–442, 31 S. Ct. 492, 498 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874); In re Ellerbe (C. C.) 13 F. 530; U. S. v. Anonymous (C. C.) 21 F. 761; U. S. v. Debs (C. C.) 64 F. 724; In re Brule (D. C.) 71 F. 943; In re Savin, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150. See, also, an old case somewhat in point here (Wartman v. Wartman, 29 Fed. Cas. No. 17210, p. 307).

"He carries the key of his prison in his own pocket." In re Nevitt, 117 F. 451, 54 C. C. A. 625.

For full discussion, see Merchants' Stock Co. v. Board, 201 F. 20, 120 C. C. A. 582.

The order made by the Southern District Court of New York, which it is now sought to be made the order of this court, expressly directs, among other things, that Yawnick and Lauterstein "be imprisoned until they shall obey said order and pay over to said trustee the sum of $5,000, as therein directed, or until further order of this court."

It is plain therefore from the form of this order that what is now sought by the trustee is the recovery of the property or its value, found by the court at that time to be in the possession of these two men, and that they, at that time, were willfully disobeying the order and holding back the property. Therefore if they now turn the property back or its value, there will be no imprisonment. Such facts indicate plainly a civil contempt.

I have no doubt, therefore, but that this court has jurisdiction to enforce in this way obedience to a duly issued order of another bankruptcy court, and authority for this view is plainly found in this circuit. In re Small Co. (C. C. A.) 5 F.(2d) 956. This case distinctly states that such jurisdiction exists. There would seem to be this distinction, however, from the Small Case, supra. Apparently there a person had been ordered to turn over property in the Southern District of New York, and took refuge within the jurisdiction of the District Court of Connecticut. The latter court issued an order to show cause why the said order of the Southern District Court should not be made the order of the District Court of Connecticut. Small appeared in that proceeding and opposed, and the Connecticut court found, in accordance with the order of the Southern District, that he had in his possession $10,000 of the bankrupt's assets, to which the trustee was entitled, and directed him to turn it over to the trustee.

The Circuit Court of Appeals, this circuit, affirmed said order and dismissed a petition to revise it, and the court in its opinion went on to say, at page 957:

"Perhaps she [trustee] might have applied directly to the Connecticut bankruptcy court for an order of commitment against Small for his contempt of the order of the New York bankruptcy court. On the contrary, she pursued the milder course of treating the order of the New York court as a decree inter partes, which it certainly was."

The above statement, however, would seem to be sufficient to indicate to this court that, should such a question, as is now presented, arise, it would be held that this Eastern District bankruptcy court, would have authority and jurisdiction to imprison in a proper case, as a coercive measure, for this failure to obey the order, of the Southern District bankruptcy court. If this is so, it is a mere detail to call the order punishing for contempt, that of the Southern District bankruptcy court, for the punishment must be by an order of this court, which, as I have stated, has apparently been authorized to exercise that power.

[4] It does seem to me, however, that, where a considerable delay exists between the time

of the entry of the order in one district and the effort to imprison in another district, the requirements are the same as if the application to imprison had been made in the first instance to the latter court, so far as the necessary ascertainment of the then ability to perform is concerned.

Particularly is this so where, as in this case, the order was obtained in May, in a district where it plainly was then and had been known the accused did not reside, and the order imprisoning them is not sought here for quite a length of time thereafter.

I am not unmindful of the not uncommon efforts to avoid their duty, by transfer or other change of possession, by persons so ordered to "turn over." If present ability to perform is shown, such change, etc., would be of no avail. Where utter inability to perform is shown to exist, whatever may have been the cause, and regardless of the "motive," that brought it about, the court, when satisfied of such inability to perform, will not imprison where it is a matter of civil contempt only.

The question of whether one court can punish a person for criminal contempt committed in another court, and having its purpose, not in the aiding or assisting of said court, but in vindicating the authority of said court, is not before me. Moreover this court would not seem to have jurisdiction. Merchants' Stock v. Board, 201 F. 20, 120 C. C. A. 582; also Ex parte Steiner, 202 F. 419, 124 C. C. A. 89.

Such contempt would seem to be rather a matter to be dealt with by the court in which the criminal contempt occurred, and there is no lack of ability in that court to punish, in the proper way and as in the case of any other criminal offense. See cases, supra.

It has seemed necessary for me to discuss this matter at some length in order to avoid any future misunderstanding. It seems to me that the order of May 20, 1926, conclusively decides that Yawnick and Lauterstein, at that time, had in their possession property of the value of $5,000, and that they were then willfully refusing to turn over either the property or its value to the trustee, in which officer title to said property was then vested.

I am also convinced that this court has jurisdiction to enforce obedience to such "turn over" order, originally made by the other bankruptcy court, by either another "turn over" order in this district, or by directing where the proof shows possession and willful disobedience, that imprisonment shall follow "until" such "turn over" order

is complied with or the court otherwise shall order.

There is nothing before this court, on this proceeding, to indicate anything otherwise than that Yawnick and Lauterstein are still in possession, and have present ability to perform, for nothing has occurred, so far as this court can see, to indicate a different situation than that which existed before the Southern District Court on May 20, 1926.

The sole question presented is one of jurisdiction. I have not considered that counsel intended, by the affidavit of Yawnick, to discuss the merits.

Accordingly, as I find this court has jurisdiction, the motion must be granted, and an order should be settled on notice and entered accordingly.

Should Yawnick and Lauterstein decide to contest the matter on the merits, then and then only would the question arise of their present inability, in good faith, to obey the order of the Eastern District of New York, and such issue, when raised, would be disposed of by this court, in such cases, in accordance with In re McCormick (D. C.) 3 Am. Bankr. R. 340, 97 F. 566, and In re Magen, 14 F.(2d) 469, May 5, 1926, not reported, opinion Inch, J.

Motion granted.